UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAROSLAW WASKOWSKI,

          Plaintiff,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

          Defendant.
_____/

Macomb County Circuit Court
Case No.  10-106869-NI

U.S. District Court Case No. 11-cv-13036

Honorable Cox

Lee Roy H. Temrowski, Jr. P-31967
Attorney for Plaintiff
45109 Van Dyke Ave.
Utica, MI 48317
(586) 254-5566

HEWSON & VAN HELLEMONT, P.C.
Mr. James F. Hewson P-27127
Attorney for Defendant
25900 Greenfield Road, Suite 326
Oak Park, MI 48237
(248) 968-5200
_____/

## PLAINTIFF'S TRIAL BRIEF

### INTRODUCTION

      This lawsuit is for **extremely serious injuries sustained by the Plaintiff, Jaroslaw Waskowski, who was only 46-years-old in an automobile collision that occurred on December 23, 2009, and is a claim for first-party no-fault benefits**.

      After the collision occurred, **Mr. Waskowski handled his own claim for first-party no-fault benefits, and it was only after those benefits were terminated that a lawsuit was filed**.

1

Plaintiff filed this lawsuit in the Macomb County Circuit Court **and Defendant removed the case to U.S. Federal District Court where it is currently pending**.

Judge Goldsmith ordered this case into facilitation.

Plaintiff would like to mention to the court **that no claims are being made in this lawsuit for "medical mileage" as those claims are the subject of a separate "class action lawsuit"**.

As for the claims being made in this case the facilitator should be aware **that the only benefits being claimed are the "outstanding benefits due" and credit has been given to the Defendant for all benefits previously paid.**

Plaintiff **has been off from work as a truck driver on numerous doctor disability certificates since the date of the accident**.

As will be elaborated upon in the damages section of this summary, **all objective medical testing has been "ABNORMAL" including the bone scan, MRI of the lumbar spine, MRI of the cervical spine and MRI of the left shoulder**.

Plaintiff is still treating for his injuries and is still off from work.

Plaintiff has undergone prescribed physical therapy three times a week from the date of the automobile accident to the present date.

## STATEMENT OF FACTS

This lawsuit is for **extremely serious** injuries sustained by the Plaintiff, Jaroslaw Waskowski, who was 46-years-old at the time in automobile collision which occurred on December 23, 2009 on Dequindre just South of Maple Road in the City of Troy and is a claim for first-party no-fault benefits.

On that date Plaintiff, Jaroslaw Waskowski, was driving his motor vehicle North on Dequindre and was at a complete stop for the traffic signal. Myrna Reyes was driving her motor vehicle North two cars in front of Plaintiff. Myrna Reyes made a left hand turn on a red blinking light directly in front a motor vehicle being driven by Bassima Jirgis, who was traveling South on Dequindre, striking Ms. Jirgis' vehicle causing Ms. Jirgis to lose control and to strike Plaintiff's motor vehicle and another vehicle being driven by David Banet.

Plaintiff, Jaroslaw Waskowski, **was** wearing his seat belt at the time of this automobile collision.

Attached to Plaintiff's Trial Brief Summary is a copy of the police report along with several photographs depicting the damage to the Plaintiff's motor vehicle.

Plaintiff, Jaroslaw Waskowski, had a vehicle repair estimate by Fischer Body Refinishing, Inc. for the amount of **$12,421.51,** a copy of which is attached to this summary**.**

Also it should be mentioned that both the Plaintiff's motor vehicle and Myrna Reyes's motor vehicle were **totaled** as a result of the automobile collision, **and neither motor vehicle was driveable**.

Attached to Plaintiff's Trial Brief is a copy of the police report.

## **LIABILITY**

Plaintiff initially handled his own claim for first-party no-fault benefits.

After Defendant stopped paying this lawsuit was filed in the Macomb County Circuit Court on April 11, 2011.

Defendant then removed this case to the U.S. Federal District Court.

As was stated in the introduction, the "only" benefits being claim are for the "**outstanding benefits due**" and again, **no claims are being made for "medical mileage" as those are the subject of a separate class action lawsuit.**

## DAMAGES

Plaintiff, Jaroslaw Waskowski, began treating with Dr. Stefan Glowacki, M.D. Orthopedic Surgeon for his back pain, neck pain and lower back pain.

Dr. Glowacki's narrative report dated July 16, 2010, states in part as follows:

**DIAGNOSIS:**

1/ **Herniated disc L4-L5**
2/ **Herniated disc C4-C5, C5-C 6, C6-C7**
3/ **Fracture ribs**
4/ **Fracture sternum**
5/ **Contusion of cervical spine and lumbosacral spine**
6/ **Head injury**
7/ **Status post motor vehicle**

**SUGGESTED TREATMENT:**
**I will suggest re-starting physical therapy and anti-inflammatory medications, pain medications and muscle relaxant. Also due Williams exercises at home. He is still not able to work and he still needs domestic help and attendant care.**

Attached to this brief are several other narrative reports from Dr. Stefan Glowacki describing Mr. Waskowski's care and treatment.

Dr. Glowacki's disabled Plaintiff, Jaroslaw Waskowski, from work and disabled him from household help and prescribed attendant care. Dr. Glowacki's disability note dated October 13, 2010 states:

**DX: S/P C/A 12/23/09 - Injuries to back, neck & ribs**

4

> **Totally incapacitated (Not able to work) Continue off work**
>
> **Will be re-evaluated on 11-10-10. Still needs domestic help and attendant care as before.**

Attached to this summary are several disability notes from Dr. Glowacki disabling Mr. Waskowski from work and prescribing household help and attendant care "**12 hours per day**".

### ALL OBJECTIVE MEDICAL TESTING WAS ABNORMAL

Plaintiff's treating physician Dr. Stefan Glowacki referred Plaintiff to William Beaumont Hospital to have a bone scan performed which was done on January 25, 2010. A copy of the bone scan report is attached to this brief.

The **abnormal** findings are as follows:

> **FINDINGS: On the whole body view, there is a subtle punctuate focus in the area slightly superior to the TMJ. There is mild tracer activity in the left sternoclavicular joint, superior aspect of the sternomanubrium and the sternal angle.**
>
> **The subtle focus at midine of L4-L5 may represent a ligamentous/focal strain at the spinous of L4.**

Dr. Glowacki referred also Plaintiff, Jaroslaw Waskowski, to Macomb MRI for MRI's of his left shoulder and of his cervical and lumbar spine on March 18, 2010 and Dr. Michele M. Keys found the following abnormalities:

> **MRI of Cervical Spine**
> **IMPRESSION:**

1. **Multilevel disc herniations with mild central canal stenosis at C4-C5 and C5-6.**
2. **Disc bulging at T2-3.**

> **MRI of Lumbar Spine**
> **IMPRESSION:**

5

**Disc herniations at L4-5 and L5-S1.**

**MRI of the Left Shoulder**
**IMPRESSION:**

1. **Degree of rotator cuff strain and small tears of both the anterior and posterior glenoid labrum.**
2. **Acromioclavicular joint degenerative changes.**
3. **Biceps tenosynovitis.**

Copies of the abnormal MRI's of the lumbar spine, cervical spine and left shoulder are also attached to this summary.

### PHYSICAL THERAPY

Mr. Waskowski **has been receiving prescribed physical therapy at Euro Rehab three times a week from January 2010 to the present date.**

### PLAINTIFF IS CURRENTLY TREATING WITH DR. MICHAEL DONAHUE FOR HIS ACCIDENT RELATED INJURIES

Mr. Waskowski began treating with Dr. Michael Donahue at Rochester Knee & Sports Medicine whose narrative report dated August 19, 2010 states in part as follows:

> **RADIOGRAPHS:** The radiographs are reviewed, demonstrating degenerative disk disease greatest seen at L5-S1.
>
> **MRI:** The MRI of the cervical spine demonstrates herniated nucleus pulposus greatest seen at C4-5 and C5-6. Further, there is a herniated nucleus pulposus of the lumbar spine seen at L5-S2 on the left.
>
> **IMPRESSION:** A 47-year-old male involved in a motor vehicle accident, suffering to the cervical and lumbar spine, more specifically herniated disks of C4-5, C5-6, as well as L5-S1.

> **PLAN: We discussed the above diagnosis with Mr. Waskowski and his wife. I will have him follow up with Dr. Glowacki for injections of said areas with epidural steroid.**

## DEPOSITION OF PLAINTIFF, JAROSLAW WASKOWSKI

Mr. Waskowski testified at his deposition that he has no prior lawsuits and no prior injuries. He further testified that he was involved in a prior automobile collision in 2009 where a drunk driver hit his motor vehicle. He went one time to the emergency room and had no injuries.

In Michigan an injured individual is entitled to be compensated for an aggravation of a pre-existing condition and Michigan Standard Jury Instructions 50.10 and 50.11 state as follows:

> **SJI2d 50.10      Defendant Takes the Plaintiff
> As He/She Find Him/Her**
>
> **You are instructed that the defendant takes the plaintiff as [he/she] finds [him/her]. If you find that the plaintiff was unusually susceptible to injury, that fact will not relieve the defendant from liability for any and all damages resulting to plaintiff as a proximate result of defendant's negligence.**
>
> **SJI 50.11      Inability to Determine Extent
> of Aggravation of Injuries**
>
> **If an injury suffered by plaintiff is a combined product of both a preexisting [disease/injury/state of health] and the effects of defendant's negligent conduct, it is your duty to determine and award damages caused by defendant's conduct along. You must separate the damages caused by defendant's conduct from the condition which was preexisting if it is possible to do so.**
>
> **However, if after careful consideration, you are unable to separate the damages caused by defendant's conduct from those which were preexisting, then the entire amount of plaintiff's damages must be assessed against the defendant.**

\* **<u>Again, the facilitator should be aware that Mr. Waskowski was "not" injured in the July 2009 automobile collision and NEVER made a claim to State Farm for injuries</u>**.

It should also be pointed out that Plaintiff's vehicle was insured with State Farm for that collision.

### PLAINTIFF'S DEPOSITION TESTIMONY REGARDING HIS INJURIES

Mr. Waskowski testified at his deposition that he has the following problems since this automobile collision has occurred:

- **He has daily pains;**
- **Numbness;**
- **Tingling;**
- **Radiating pain;**
- **He takes Vicodin everyday;**
- **He cannot bowl;**
- **He cannot cut the grass of maintain the house;**
- **He cannot go shopping;**
- **He cannot clean the house;**
- **He cannot do laundry;**
- **He cannot do housework;**
- **He cannot visit friends;**
- **He daughter now takes care of him;**
- **He does not drive now;**

- **He has trouble sleeping;**

- **He wakes up 5 to 6 times a night due to pain.**

### DEPOSITION OF KAMILA WASKOWSKA

Kamila Waskowska is Plaintiff's daughter and she testified at her deposition on July 21, 2010 that she arrived at the scene of the accident after it occurred. She testified that she works as a waitress in a restaurant across the street from where this accident occurred. She testified that her father, Jaroslaw Waskowski, loss consciousness and that he was in shock. Mr. Waskowski further told his daughter that he was in pain and didn't know how he ended up in a parking lot.

Ms. Waskowska further testified that her father, Jaroslaw Waskowski, was complaining of neck and pain back. She further testified that her father's car was towed from the scene of the accident.

### DR. HIGGINBOTHAM HAS NO CREDIBILITY

In the course of this lawsuit, Defendant had Plaintiff examined one time by Dr. Higginbotham.

Dr. Higginbotham wrote his "original report" on July 23, 2010 and a supplemental report on "September 3, 2010".

These bogus reports unequivically demonstrate and prove that Dr. Higginbotham is nothing short of a "**hired gun**".

There is absolutely no facts; no logic and positively no evidence to support Dr. Higginbotham's "opinion" of "symptom amplification".

That is nothing short of a "bogus opinion" with nothing to support it.

If that were true, then why would Dr. Higginbotham opine in his report the following:

**"It would be appropriate for him to have a course of an epidural steroid injection to see if this would be beneficial for him.**

**I would recommend that he not do repeated bending or heavy lifting.**"

Finally, in his "supplemental" report, after "**personally reviewing the actual images of the MRI**" Dr. Higginbotham **finally concedes the following**:

**"After review of these images, I would concur that the MRI studies show, what appears to be, evidence of multiple level disc herniation in the cervical spine at C4-5, C5-6 and C6-7 and also lumbar disc herniation at L4-5 and L5-S1".**

It must've killed Dr. Higginbotham to have to agree with the neuroradiologist, Dr. Glowacki and Dr. Donahue that all of the MRI's were abnormal and showed evidence of multiple disc herniation. It must've killed Dr. Higginbotham so much that he then had to add his two cents worth and go on to state, "it would still unusual for him to suffer a two level disc herniation in the lumbar spine and three level disc herniation in the cervical spine based upon the history of his onset of symptoms following the accident that he reports".

When he wrote that, did Dr. Higginbotham "**forget**" the following facts and evidence regarding the collision:

- **Plaintiff's motor vehicle was "not driveable";**
- **Defendant's motor vehicle was "not driveable";**
- **Bassima Jirgis' motor vehicle was "not driveable";**
- **Damage to Plaintiff's motor vehicle was $12,421.51;**
- **All three motor vehicles had to be "towed" from the scene;**

10

- **Plaintiff testified that and told Dr. Higginbotham that after being struck <u>Plaintiff's motor vehicle was pushed three lanes onto the sidewalk and into the grass and ended up in a parking lot of a flower shop on the corner on the other side of the street</u>;**

- **Plaintiff testified and told Dr. Higginbotham that he was at a complete stop when the other car smashed into him and the impact "felt like an explosion".**

The bottom line is this, Dr. Higginbotham can try his best to put his "**spin**" on this collision but it doesn't change the facts and evidence that this was clearly a severe automobile collision.

## OUTSTANDING MEDICAL BILLS

In this lawsuit Plaintiff, Jaroslaw Waskowski is claiming the following outstanding medical bills:

**Oakland MRI..................................................................................$29,240.00**

**Euro Rehab...................................................................................$ 7,101.00**

**Dr. Stefan Glowacki......................................................................$ 3,200.00**

**TOTAL...........................................................................................$39,541.00**

## PLAINTIFF'S CLAIM FOR WAGE LOSS

Mr. Waskowski **was gainfully employed at the time of this collision as a truck driver at Yes Express.**

Mr. Waskowski also testified that he was employed at Yes Express as a truck driver and has been off work on doctor disability notes since the date of this automobile collision. Defendant, State

Farm paid Mr. Waskowski's outstanding wage loss up to April 2011 and therefore, Mr. Waskowski is claiming the following outstanding wage loss benefits:

**Yes Express**
**April 2011 through November 27, 2012**
**$3,200.00 PER MONTH**
**19 months x's  $3,200.00 per month.......................................................$ 60,800.00**

    **\*       Defendant paid Plaintiff's wage loss benefits up through March 2011.**

### PLAINTIFF'S CLAIM FOR REPLACEMENT SERVICE BENEFITS

In this lawsuit Plaintiff, Jaroslaw Waskowski, is also claiming Replacement Service Benefits as follows:

**Camilla Waskowska**
**Margaret Waskowska**
**7 days per week**
**$20.00 per day**
**$140.00 per week**
**November 2010 through November 27, 2012**
**109 weeks  x's  $140.00 per week............................................................$ 15,260.00**

    **\*       Defendant paid Plaintiff's replacement service benefits up through October 2010.**

### PLAINTIFF'S CLAIM FOR ATTENDANT CARE BENEFITS

In this lawsuit Plaintiff, Jaroslaw Waskowski, is also claiming attendant care benefits as follows:

**Camilla Waskowska**
**Margaret Waskowska**
**7 days per week**
**$15.00 per hour**
**12 Hours per day x's $15.00 per hour = $180.00 per day**
**$180.00 per day x's 7 days per week = $1,260.00 per week**
**November 2010 through November 27, 2012**

**109 weeks x's $1,260.00 per week..............................................................$137,340.00**

> \*   Defendant paid Plaintiff's attendant care service benefits up through October 2010.

### PLAINTIFF IS ENTITLED TO ATTORNEY FEES, COSTS AND STATUTORY INTEREST

MCL 500.3148 provides for an award of attorney fees as a charge against the insurer. An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

Where, as here, benefits are overdue, as has been determined as a result of the default judgment, a rebuttable presumption that the insurer acted unreasonably arises and the burden shifts to Citizens to establish that its delay was not unreasonable. Attard v. Citizens Ins Co of America, 237 Mich. App 311, 317; 602 NW2d 633 (1999); McKelvie v Auto Club Ins Ass'n, 203 Mich App 331; 512 NW2d 74 (1994); Bloemsma v Auto Club Ins Ass'n, 174 Mich App 692; 436 NW2d 442 (1989); Combs v Commercial Carriers, 117 Mich App 67; 323 NW2d 596 (1982); Bradley v DAIIE, 130 Mich App 34; 343 NW2d 506 (1983). Delay may be reasonable if "based on a legitimate question of statutory construction, constitutional law, or factual uncertainty." Attard, supra, at 317. It is up to the Court to decide whether to award fees under MCL 500.3148.

There is no dispute here that Citizens acted unreasonably because this Court has entered default judgment against Citizens. By Citizens failing to respond, the allegations of the complaint were admitted, including that the benefits were owed and were overdue. Thus, Plaintiff is entitled to 12 per cent penalty interest under the no fault act, in addition to judgment interest and pre-

complaint interest.

An award of fees under the no fault act based on a contingency fee agreement is appropriate. University Rehab. Alliance, Inc. v. Farm Bureau General Ins. Co. of Michigan, 279 Mich.App. 691, 760 N.W.2d 574 (2008); MCR 8.121 (one third contingency fee in no fault cases "deemed to be fair and reasonable.").

In University Rehab, the Court cited the factors in Wood v. Detroit Automobile Inter–Ins. Exch., 413 Mich. 573, 588, 321 N.W.2d 653 (1982) and upheld the exercise of discretion to award of a contingency fee amount as no fault attorney fees. The trial court should look to the totality of the circumstances, including the existence of a contingency fee contract.

The factors set forth in Wood include "'(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.'" 413 Mich. at 588 (quoting Crawley v. Schick, 48 Mich. App. 728, 737; 211 N.W.2d 217 (1973)). The Court in Wood held that "a trial court should consider the guidelines of Crawley, [but] it is not limited to those factors in making its determination. Further, the trial court need not detail its findings as to each specific factor considered." 413 Mich. at 588.

**Taxable Costs:**

Plaintiff is entitled to taxable costs pursuant to MCR 2.625. Under MCR 2.625(F)(1), this Court may tax costs "on signing the judgment...." Each of the items listed was necessary to this case.

1. Proceedings before Trial -
Sundry additional costs in civil actions.
MCL §600.2441(2)(a) $20.00

2. Filing Fee
MCL §600.2529(1)(a) $150.00

3. Motion Fees (__ motions filed)
MCL §600.2529(1)(e) $____

4. Jury Demand Fee
MCL §600.2529(1)(c) $85.00

In this case Plaintiff is requesting the following damages:

**No-Fault Benefits Owed..........$ 252,941.00**

**Attorney fee.............................$  84,313.66**

**Statutory interest.....................$  30,352.92**

**Costs.........................................$       385.90**

### PLAINTIFF'S EXHIBITS

Exhaustive discovery has been conducted in this case.

At the facilitation hearing Plaintiff will provide the facilitator with copies of all of Plaintiff's medical records and test results **which confirm and verify all of Plaintiff's injuries which have been outlined in this summary.**

As for Plaintiff's "household help and attendant care claims", **Plaintiff would like the facilitator to know that Plaintiff's care providers, his two daughters meticulously documented and completed VOLUMINOUS FORMS that were provided to State Farm documenting daily what services they provided to the Plaintiff.**

Again, **these voluminous forms will be provided at the facilitation hearing.**

15

## **RELIEF REQUESTED**

The conduct of the Defendant in this case is absolutely deplorable.

Michigan Law requires insurers to pay a penalty (no matter how small) for benefits payments made more than 30 days after the insurer receives the proof of the loss and the proof of the amount of the loss. The penalty is 12% per annum, applied to the amount of the benefits payment which was late. The penalty is calculated based upon the number of days the payment was made after the 30 day period expired.

The Defendant's conduct in this case and the Defendant's delay in making payment to the Plaintiff is absolutely inexcusable.

The Plaintiff in this case requests a case evaluation award in the amount of **$367,993.48**.

/s/ Lee Roy H. Temrowski, Jr.
_____
Lee Roy H. Temrowski, Jr.
Attorney for Plaintiff

---

**Proof of Service**
I served this document by mailing it to the attorneys of record in this case
(shown on the caption) on November 20, 2012.
I declare that the statements above are
true to the best of my knowledge, information and belief.

/s/ Sheri Pregano
_____