1

2                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
3                          SOUTHERN DIVISION

4    JAROSLAW WASKOWSKI,

5                         Plaintiff,

6         -v-                          Case No. 11-13036

7    STATE FARM MUTUAL AUTOMOBILE
     INSURANCE COMPANY,

8    _____ Defendant./

9                      **JURY TRIAL – DAY FIVE**
                       **BEFORE HON. SEAN F. COX**
10                     United States District Judge
                            257 U.S. Courthouse
11                     231 West Lafayette Boulevard
                         Detroit, Michigan 48226
12
                       **(Wednesday, December 5, 2012)**
13

14   APPEARANCES:        LEE ROY H. TEMROWSKI, ESQUIRE
                         Appearing on behalf of the Plaintiff.
15
                         JAMES F. HEWSON, ESQUIRE
16                       Appearing on behalf of the Defendant.

17   COURT REPORTER:     MARIE METCALF, CVR, CM
                         Federal Official Court Reporter
18                       257 U.S. Courthouse
                         231 W. Lafayette Boulevard
19                       Detroit, Michigan 48226
                         metcalf_court@msn.com

20

21

22

23

24

25

1                    **TABLE OF CONTENTS**

2    **PROCEEDINGS — Wednesday, December 5, 2012**

3    **WITNESSES CALLED BY DEFENDANT:**

4    **DR. DOUGLAS QUINT**

5    VIDEOTAPED DEPOSITION PLAYED............................   4

6    **TERRI ANN PAGE**

7    DIRECT EXAMINATION BY MR. HEWSON........................   4

8    CROSS-EXAMINATION BY MR. TEMROWSKI......................   8

9    REDIRECT EXAMINATION BY MR. HEWSON.....................  11

10   **STEVEN R. GEIRINGER, M.D.**

11   VIDEOTAPED DEPOSITION PLAYED............................  14

12   **REBUTTAL WITNESSES CALLED BY PLAINTIFF:**

13   **JAROSLAW WASKOWSKI**

14   DIRECT EXAMINATION BY MR. TEMROWSKI.....................  17

15   CROSS-EXAMINATION BY MR. HEWSON........................  19

16   **EXHIBITS:**                                      **REC'D:**

17   PLAINTIFF'S EXHIBIT R..................................  11

18   DEFENDANT'S EXHIBIT NOS. 2, 2A, 4, 5..................  15

19   DEFENDANT'S EXHIBIT NOS. 11, 12, 13, 14, 15, 16, 17.....  16

20

21

22

23

24

25

*Waskowski v. State Farm*

1           Detroit, Michigan

2           Wednesday, December 5, 2012

3           At about 9:16 a.m.

4                   *    *    *

5       DEPUTY COURT CLERK:  All rise for the jury.

6       (Jury in at 9:17 a.m.)

7       DEPUTY COURT CLERK:  Please be seated.

8       THE COURT:  All right, members of the jury, good

9   morning.

10      THE JURY:  Good morning.

11      THE COURT:  The defense, as I understand, is going

12  to proceed with its case.

13      And Mr. Hewson, your first witness will be?

14      MR. HEWSON:  Dr. Douglas Quint, Your Honor.

15      THE COURT:  By way of video dep?

16      MR. HEWSON:  That is correct.

17      THE COURT:  And members of the jury, if you can't

18  hear or see, just raise your hand, okay?

19      MR. HEWSON:  Thank you.  And for the record, I'd

20  stipulate to the court reporter not having to participate in

21  this portion of the trial.  We'll file the transcript as the

22  Court has indicated.

23      THE COURT:  Is that agreeable, Mr. Temrowski?

24      MR. TEMROWSKI:  Absolutely.

25      THE COURT:  Okay.

*Page – Direct*

1    **DR. DOUGLAS QUINT, DEFENDANT'S WITNESS, VIA VIDEOTAPED**

2                          **DEPOSITION**

3              (Videotaped deposition played for the jury)

4              THE COURT:  All right, Mr. Hewson.  Your next

5    witness is?

6              MR. HEWSON:  I'm going to call Terri Page to the

7    stand, Your Honor.

8              THE COURT:  And, Ms. Page, you're still under oath,

9    okay?

10             THE WITNESS:  Okay.

11             THE COURT:  Please have a seat in the witness chair.

12        **TERRI ANN PAGE, DEFENDANT'S WITNESS, RECALLED**

13                     **DIRECT EXAMINATION**

14   BY MR. HEWSON:

15   Q    Ms. Page, after the questioning yesterday –– or the other

16   day, I asked you to review the reports of Dr. Endress,

17   specifically, did I not?

18   A    Yes.

19   Q    And how many reports were there that you reviewed?

20   A    Dr. Endress had three reports.

21   Q    Okay.  Do you know why there were three reports?

22   A    They were addendums.

23   Q    Okay.  And who requested those addendums?

24   A    I did.

25   Q    When you provided material to Dr. Endress for a review,

*Page – Direct*

1   did you have the actual images or films of the MRIs to send to

2   Dr. Endress?

3   A   No, I didn't.

4   Q   Did you send him a copy of the police report?

5   A   I did.

6   Q   And can you tell -- the question came up of vendors.   Who

7   was the vendor of the company that, I guess, assigned the

8   examination to Dr. Endress, if you know?

9   A   The name of the vendor?

10   Q   Yeah.

11   A   That was Professional Medical Services.

12   Q   Okay.   Do you know if Dr. Endress works for them or how

13   that works, if you have that knowledge?

14   A   I just know that there's many vendors and each of the

15   vendors have several doctors that they have do the physical

16   exam and the report.   And most of the vendors have a variety

17   of specialties, so they might have an orthopedic doctor or

18   they might have a physical medicine doctor, or a dentist or a

19   chiropractor, but most all of them have a wide variety.   And

20   it's several doctors that most vendors have that do these

21   physical exams.   Some do psychological exams and then they do

22   reports.

23   Q   The Oakland MRI in this case that's in evidence was

24   formed in March of 2011.   Do you remember when Dr. Endress was

25   authoring his reports, whether --

*Page – Direct*

1    A    Yes.

2    Q    -- it was before 2011?

3            Do you remember the dates?

4    A    I can tell you the month and the year.

5    Q    Please.

6    A    The first one was October of 2010, the second one would

7    have been November of 2010 and then the third addendum was

8    February 2011.

9    Q    All right.  After his reports to you and your

10   communication with Mr. Waskowski, did you ever receive any

11   bills for injection therapy for Mr. Waskowski?

12   A    No, I didn't.

13   Q    Did you ever receive any bills or reports for physical

14   therapy to his left shoulder?

15   A    No, I didn't.

16   Q    Did you pay for any further attendant care after the

17   report from Dr. Endress?

18   A    No, I didn't.

19   Q    Why?

20   A    Well, there were several reasons.  One, it looks like Dr.

21   Glowacki's treatment wasn't working, since we're now ten

22   months after the accident and he still needs 12 hours of

23   attendant care.  As I mentioned earlier, if you're getting

24   better, that typically decreases.

25           Number two, when Mr. Waskowski sought a second

*Page – Direct*

1    opinion in August of 2010 with Dr. Donahue, he also did not

2    recommend any kind of attendant care or replacement services.

3    As a matter of fact, he said activity as tolerated.

4          And then when we got Dr. Endress' reports from

5    October and November of 2010, he said no attendant care.  So

6    his own doctor, Dr. Donahue, said no attendant care or

7    replacement services.  Dr. Endress said no attendant care,

8    also.

9          And they both recommended injections, so it seemed

10   right to look at everything in totality and make my decision

11   based on that.

12   Q    When you reviewed Dr. Endress' report, did he indicate

13   whether or not there was any evidence of a rotator cuff tear?

14   A    He said there was not.

15   Q    Just so that we're clear, the file went to Cheryl

16   Kucharski, I think the testimony was, do you remember if it

17   was May of 2011?

18   A    I think it was April of 2011.

19   Q    April 2011?

20   A    Yeah.

21   Q    But you did not pay any benefits after November of 2010?

22   A    Not -- no.

23   Q    Very good.

24          MR. HEWSON:  Thank you, Your Honor.  I have nothing

25   further of the witness.

*Page – Cross*

1          THE COURT:  Okay.  Mr. Temrowski.

2                    **CROSS-EXAMINATION**

3    BY MR. TEMROWSKI:

4    Q    Ms. Page, as Mr. Waskowski's PIP claims adjuster, are you

5    familiar with Mr. Waskowski's PIP claim file?

6    A    The portion that I handled.  That's what I mentioned

7    earlier.

8    Q    Okay.  I'm going to hand you these four documents and ask

9    if you could identify those, please?

10   A    Okay.

11   Q    And could you tell the jury what those documents are?

12   A    This is a letter that we send out with copies of the

13   reports.  We tell them when we send the independent doctor's

14   reports out, we always make sure the injured party has a copy.

15   We send a letter with it, outlining a claims decision, and

16   then we also tell them to share the report with their doctor,

17   and if they dispute it or want to rebut it, they can --

18   they're more than welcome to rebut it or have their doctor

19   rebut it.

20   Q    And can that --

21   A    And then these three things are the reports that I just

22   talked about.

23   Q    That you received from Dr. Endress?

24   A    From Dr. Endress.

25   Q    And, in fact, in this document here, this was a

*Page - Cross*

1   termination letter of Mr. Waskowski's benefits, correct?

2   A    Not exactly, no.

3   Q    Oh, it wasn't?

4   A    No, it wasn't.  It specifically lists, and we covered

5   this before, that there's different types of benefits you can

6   get under personal injury protection.  You have medical

7   benefits, you have wage loss, you have attendant care,

8   mileage, and you have replacement services.

9        This is outlining that we will not pay for the

10   attendant care and the replacement services, and that's what

11   it says.

12       And then it -- we attached a copy of both the

13   October IME -- or independent medical exam report and the

14   November independent medical exam report.  Those were both

15   from Dr. Endress.  So we sent this out as a packet.

16   Q    So it's a partial denial of benefits?

17   A    It's a partial.

18   Q    Okay.  And are these four documents that you have in

19   front of you contained within Mr. Waskowski's PIP claim file?

20   A    Yes.

21   Q    Were these records kept and maintained in Mr. Waskowski's

22   PIP claim file in the ordinary course and scope of business?

23   A    After I took over -- or after I relinquished the file, I

24   don't know what happened to it.  It was in the claim file when

25   I was handling it.

*Page - Cross*

1   Q     Okay.  And you received those three reports from Dr.

2   Endress, correct?

3   A     I received these reports from the vendor, Professional

4   Medical Services.  He authored them.

5   Q     And when you sent Mr. Waskowski that partial denial

6   letter, you sent him copies of those reports?

7   A     This letter went with the October report and the November

8   report.  Whenever we get new information in, we send it to the

9   independent doctors so we can give them as complete a picture

10  as possible with all the documents that we have.

11          So we had additional information and then there was

12   -- so these two would have went out with that, and then we

13   received additional information and that resulted in the

14   third report that was done in February of 2011.

15  Q     And did you rely upon Dr. Endress' reports when you

16  partially denied benefits to Mr. Waskowski?

17  A     Well, as I told Jim, it was one thing I considered.  I

18  look at the claim file in its totality, but his opinions for

19  the most part seemed to agree with Mr. Waskowski's second

20  opinion doctor, Dr. Donahue, regarding getting injections and

21  no attendant care.  So those both weighed in on it as well.

22          MR. TEMROWSKI:  Your Honor, I don't believe that I

23  have any other questions.  I move to admit those three -- or

24  four documents into evidence.

25          MR. HEWSON:  Well, Your Honor, we don't have a

*Page – Redirect*

1   number for them, but I don't have any objection to them coming

2   in.  That's why I called the witness.

3              THE COURT:  Okay.  How are we going to mark them?

4              MR. TEMROWSKI:  I believe that's -- I have no

5   objection.

6              THE COURT:  Okay.

7              MR. HEWSON:  Although, Your Honor, for clarity's

8   sake, I believe that we had marked those as part -- as Exhibit

9   R in Dr. Geiringer's deposition, so why don't we just use R,

10  rather than have two sets of those in?

11             MR. TEMROWSKI:  R is fine.

12             THE COURT:  All right.  So there's a motion to admit

13  R.  Any objection?

14             MR. HEWSON:  None.

15             THE COURT:  Exhibit R is received.

16             MR. HEWSON:  Your Honor, could I -- are you done?

17             MR. TEMROWSKI:  Yes.

18             MR. HEWSON:  May I ask just two more questions?

19             THE COURT:  You have redirect.

20             MR. HEWSON:  Yes, sir.  Thank you.

21                      **REDIRECT EXAMINATION**

22  BY MR. HEWSON:

23  Q    There was a third report that Dr. Endress authored,

24  correct?

25  A    That's correct.

11

*Page – Redirect*

1  Q    And apparently Dr. Glowacki and the physical therapist

2  sent some sort of response in; do you recall that?

3  A    Yes, I do.

4  Q    What was Dr. Endress' response to Dr. Glowacki and the

5  physical therapist?

6  A    It didn't change his mind.  He was -- they were trying to

7  get, it looked like the letters -- I don't have the letters in

8  front of me, but the letters were something -- must have been

9  something pertaining to how he needs attendant care.

10         And so, like I said, when I get new information,

11  then I'll forward it to the independent doctor to look at.

12  He looked at the letter, and it said -- his reply was, "I do

13  not think he requires help with bathing, grooming and

14  dressing.  I disagree with Dr. Glowacki and the physical

15  therapist regarding the need for these additional attendant

16  care services."

17         So he's just maintaining his original opinion that

18  he gave us back in November, but we still need him to look at

19  this.

20  Q    Thanks, I appreciate it.

21         MR. HEWSON:  Your Honor, I have nothing further.

22         THE COURT:  Recross?

23         MR. TEMROWSKI:  Nothing, Your Honor.

24         THE COURT:  All right.  Ms. Page, you may step down.

25         (Brief pause in proceedings)

Page – Redirect

1          THE COURT:  So the next witness is?

2          MR. HEWSON:  Dr. Geiringer, Your Honor.

3          THE COURT:  And how long will that take?

4          MR. HEWSON:  One hour and 56 minutes.

5          THE COURT:  Okay.  You know, let's take a little

6   break, about 15 minutes, and then we'll bring you out and

7   we'll hear the video dep of Dr. Geiringer, okay?

8          Jesse, you want to take the jury into the jury room?

9          COURT CLERK:  All rise for the jury.

10          (Jury out at 10:21 a.m.)

11          COURT CLERK:  You may be seated.

12          THE COURT:  Okay.  We don't have the jury

13   instruction from your secretary.

14          MR. HEWSON:  I'll call them right this second,

15   Judge.

16          THE COURT:  Okay.  So we need --

17          MR. HEWSON:  Can I use my phone in here?

18          (Court in recess at 10:22 p.m.)

19          (Court in session at 10:46 a.m.)

20          DEPUTY COURT CLERK:  Court's back in session.

21   Please be seated.

22          MR. HEWSON:  Judge, we got the special jury

23   instruction corrected, the jury verdict form is getting the

24   proper numbering on the bottom and they're putting captions in

25   right now, so those should e-filed in just a little bit.

*Waskowski v. State Farm*

1          THE COURT:  Okay, great.

2          Ready with the tape?

3          MR. HEWSON:  Yes, sir.

4          DEPUTY COURT CLERK:  All rise for the jury.

5          (Jury in at 10:47 a.m.)

6          DEPUTY COURT CLERK:  Please be seated.

7          THE COURT:  All right, our next witness is Dr.

8    Geiringer; is that correct?

9          MR. HEWSON:  That's correct, Your Honor.

10          THE COURT:  All right, let's start the tape.

11          MR. HEWSON:  I would also stipulate that the court

12   reporter be excused and I'll file the accurate copy with the

13   Court.

14          THE COURT:  The original, the redacted original?

15          MR. HEWSON:  Yes, Your Honor.

16          THE COURT:  Is that correct?

17          MR. HEWSON:  Yes, Your Honor.

18          THE COURT:  All right, that's what we'll do.

19        **STEVEN R. GEIRINGER, M.D., DEFENDANT'S WITNESS, VIA**

20                        **VIDEOTAPED DEPOSITION**

21          (Videotaped deposition played for the jury)

22          THE COURT:  All right.  Mr. Hewson, does the defense

23   wish to present any further evidence?

24          MR. HEWSON:  Yes, Your Honor.  Only as to the

25   documentary portion of the file.  I have no further witnesses

14

*Waskowski v. State Farm*

1    I intend to call.

2          And I believe that there are no objections to my

3    exhibits.  I believe Exhibits One, Two and Three, which are

4    plaintiff's responses to discovery have already been admitted.

5          THE COURT:  I don't have a -- I have a check for

6    One.  I don't have a check for Two and Two-A.  Is there any

7    objection to Two and Two-A, Mr. Temrowski?

8          MR. TEMROWSKI:  Pardon me?

9          THE COURT:  Any objection to Two and Two-A?

10         MR. TEMROWSKI:  No.

11         THE COURT:  All right, they're received.

12         I have Defense Exhibit Three and I do not have Four

13   and Five.

14         MR. HEWSON:  You do not yet, Your Honor.  Exhibit

15   Four is the William Beaumont x-ray of January 4, 2010 and

16   Exhibit Five is the EMG from Dr. Broder March 24, 2011 and I

17   move their admission.

18         MR. TEMROWSKI:  No objection.

19         THE COURT:  They're received.

20         All right.  So I have Exhibits One, Two, Two-A,

21   Three, Four, Five, Six, Seven and Eight from defense?

22         MR. HEWSON:  Yes, Your Honor.

23         I would at this time move the admission of Exhibit

24   11, which is Dr. Geiringer's curriculum, Exhibit 12, which is

25   Dr. Geiringer's reports, Exhibit 13, which is Dr. Quint's

*Waskowski v. State Farm*

1    curriculum, Exhibit 14, which is Dr. Quint's medical reports,

2    and then Exhibits 15, 16 and 17 are the exhibits that were

3    marked to the deposition of Margaret, Kamila and Mr.

4    Waskowski.  And I believe those are agreed to, but I'm moving

5    their admission at this time.

6                THE COURT:  All right.  Any objection to Defense --

7                MR. TEMROWSKI:  No.

8                THE COURT:  -- Exhibits 9, 10, 11, 12, 13, 14, 15,

9    16 and 17?

10               MR. HEWSON:  Your Honor, I wasn't even going to

11   offer nine and ten at this particular point.  They were never

12   discussed during the course of the trial, so I would withdraw

13   those from the exhibit list.

14               THE COURT:  All right, so there's no nine and

15   there's no ten?

16               MR. HEWSON:  Correct, Your Honor.  Thank you.

17               THE COURT:  Okay.  And does that cover all the

18   defense exhibits?

19               MR. HEWSON:  It does, sir.  Thank you.

20               THE COURT:  All right.  And we have Joint Exhibits

21   One, Two, Three, Four and Five, and we have Plaintiff's

22   Exhibits A, B, C, D, E, F, J, K, L, M, N, O, P, Q and R

23   admitted?

24               MR. HEWSON:  Correct, Your Honor.

25               THE COURT:  Is that correct?

*Waskowski – Direct*

1              MR. TEMROWSKI:  Yes.

2              THE COURT:  All right.  Is that it, Mr. Temrowski?

3              MR. TEMROWSKI:  You mean, for rebuttal?

4              THE COURT:  No, for plaintiff's exhibits?

5              MR. TEMROWSKI:  Yeah.

6              THE COURT:  Okay, great.

7              Defense rests.

8              MR. HEWSON:  Yes, sir.

9              THE COURT:  Rebuttal?

10             MR. TEMROWSKI:  Yes.

11             THE COURT:  Okay.

12             MR. TEMROWSKI:  And I promise it will be short.

13             THE COURT:  Okay, fine.

14             MR. TEMROWSKI:  Mr. Waskowski.

15             THE COURT:  Sir, you're still under oath.  Could you

16     come back up to the witness chair?

17       **JAROSLAW WASKOWSKI, PLAINTIFF, RECALLED (NO INTERPRETER)**

18                         **DIRECT EXAMINATION**

19     BY MR. TEMROWSKI:

20     Q    Mr. Waskowski, we just heard Dr. Endress' -- excuse me,

21     Dr. Geiringer's deposition testimony, correct?

22     A    Yes.

23     Q    And there was some question about the reports from Dr.

24     Donahue?

25     A    No.

*Waskowski – Direct*

1    Q    My question is, how many times did you actually go see

2    Dr. Donahue?

3    A    Just one.

4    Q    Okay.  And then there was some testimony about your wife

5    being in the room for the exam.  Was your wife present?

6    A    No.  I am divorced.  I haven't wife.

7    Q    And who was present during the exam?

8    A    My daughter, Kamila.

9    Q    And regarding the physical examination that Dr. Geiringer

10   said that he performed upon you, my question is, at any time

11   when he examined you, did he measure any of your muscles?

12   A    No.

13   Q    And did he ever examine your foot?

14   A    No.

15   Q    Did he ever examine your legs?

16   A    No.

17   Q    And Dr. Geiringer testified that the physical examination

18   portion of the exam lasted 30 minutes.

19   A    Yes.

20   Q    Did it last 30 minutes?

21   A    I was there 30 minutes, but 15 minutes he gave me many

22   question about the accident, my -- how I feel, and examined on

23   me only ten, maybe fifteen minutes, maximum, make the test.

24   Q    Thank you, I have nothing else.

25          THE COURT:  Mr. Hewson?

*Waskowski - Cross*

1          MR. HEWSON:  Just one.

2                    **CROSS-EXAMINATION**

3     BY MR. HEWSON:

4     Q    Did you follow Dr. Donahue's advice, the second-opinion

5     advice, sir?  Did you ever do what the doctor suggested?

6     A    No.

7          MR. HEWSON:  Thank you.  I have nothing else.

8          THE COURT:  Redirect?

9          MR. TEMROWSKI:  No, nothing else.

10         THE WITNESS:  I don't -- sir, that --

11         THE COURT:  Sir, I apologize.  There's no question

12    pending, I think.

13         MR. TEMROWSKI:  Did you want to add to that answer?

14         MR. HEWSON:  Your Honor, that's not even a proper

15    question.

16         THE WITNESS:  No, I don't understand question, his

17    question.  I didn't understand.  Sorry.

18         MR. HEWSON:  Well, then let me rephrase.

19    BY MR. HEWSON:

20    Q    Did you go to Dr. Donahue for a second opinion?  That's

21    what you told us yesterday.

22    A    Yes, I go to Dr. Donahue for second opinion.

23    Q    Did you follow his recommendation?

24    A    Which recommendation?

25    Q    You didn't even know there was a recommendation, did you?

*Waskowski - Cross*

1    A    No, I go there --

2    Q    Dr. Glowacki never told you that Dr. Donahue made a

3    recommendation for your treatment?

4    A    No.

5    Q    Okay, that's good.  Thank you.  I have nothing else.

6         THE COURT:  Mr. Temrowski, anything further?

7         MR. TEMROWSKI:  No.

8         THE COURT:  All right, sir.  Thank you very much.

9    You may step down.

10        THE WITNESS:  Okay.

11        MR. TEMROWSKI:  I have no other --

12        THE COURT:  Any other rebuttal witnesses?

13        MR. TEMROWSKI:  No, no other rebuttal witnesses.

14        THE COURT:  Okay.  And are you resting on your

15   rebuttal case?

16        MR. TEMROWSKI:  Yes, Your Honor.

17        THE COURT:  Okay.  Members of the jury, that

18   concludes what I call the testimonial phase of the trial,

19   where you've heard from the different witnesses you're going

20   to hear from, as well as having the opportunity to see certain

21   documents and objects that were received into evidence as

22   exhibits.  And we went over the exhibit list just a moment

23   ago.

24        All that remains for you is to hear the jury

25   instructions and begin your deliberations.  Sorry.  Hear the

*Waskowski v. State Farm*

1    jury instructions, hear the closing arguments and then begin

2    you deliberations, which you'll probably do sometime later

3    tomorrow morning.

4              You still can't discuss this case, correct?

5              All right.  So we'll see everyone upstairs at 8:00

6    tomorrow morning and then I'll read the jury instructions to

7    you and then we will proceed into the closing arguments.

8              Remember, the plaintiff will get up -- or excuse me,

9    Mr. Temrowski will get up.  He will give you his closing

10   argument.  In the closing argument he's going to tell you what

11   he believes the evidence in this case has shown to you.

12             When he's done, Mr. Hewson will get up and give you

13   his closing argument on behalf of State Farm.  And like Mr.

14   Temrowski, he's going to tell you what he believes the

15   evidence in this case has shown to you.

16             And then finally, since the plaintiff has the burden

17   of proof, Mr. Temrowski will be allowed to give a rebuttal

18   argument to Mr. Hewson's closing argument, okay?  And then

19   you'll start your deliberations.

20             And again, you recall what evidence is.  Evidence

21   includes only, evidence includes only the sworn testimony of

22   any witness who testified from the witness chair during the

23   course of the trial, as well as any document or object that

24   was received into evidence as an exhibit, okay?

25             All right.  So have a great afternoon.

*Waskowski v. State Farm*

1          JUROR:  Will it be possible to consider what we've

2     seen on video?

3          THE COURT:  Yes.  The testimony of the doctors that

4     you saw would be evidence, yes.  Okay.

5          DEPUTY COURT CLERK:  All rise.

6          (Jury out and Court in recess at 12:47 p.m.)

7          (Court in session at 2:24 p.m.)

8          THE COURT:  All right.  In the folder in front of me

9     in my right hand, do I have the jury instructions that you

10    wish read to the jury in the order that you wish them read, as

11    well as the verdict form?

12         MR. TEMROWSKI:  Yes, Your Honor.

13         MR. HEWSON:  Yes, Your Honor, you do.

14         THE COURT:  Okay.  Thank you very much.  See you

15    tomorrow morning at about 8:00.

16         MR. HEWSON:  Yes, sir.

17         MR. TEMROWSKI:  Eight o'clock, yes.

18         THE COURT:  And as we discussed off the record, I

19    may ask you how much time you need to close.  Mr. Temrowski,

20    I'll ask you how much time you need to close and how much time

21    you need for rebuttal.  Mr. Hewson, I'm going to ask you how

22    much time you need to close.

23         MR. HEWSON:  Yes, sir.

24         THE COURT:  Essentially, whatever you ask for, I

25    give you within reason.  However, I do hold you to the time,

*Waskowski v. State Farm*

1    all right?

2              MR. HEWSON:  Yes, sir.

3              THE COURT:  Okay, see you tomorrow morning.

4              (Court in recess at 2:25 p.m.)

5                            *      *      *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1

2

3

4

5

6

7

8

9

10

11

12

13

14                    C E R T I F I C A T I O N

15          I, Marie J. Metcalf, Official Court Reporter for the

16   United States District Court, Eastern District of Michigan,

17   Southern Division, appointed pursuant to the provisions of

18   Title 28, United States Code, Section 753, do hereby certify

19   that the foregoing is a correct transcript of the proceedings

20   in the above-entitled cause on the date hereinbefore set

21   forth.

22          I do further certify that the foregoing transcript

23   has been prepared by me or under my direction.

24   s\Marie J. Metcalf                         09-07-13

25   Marie J. Metcalf, CVR, CM                    (Date)
```